**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **SKILL STATE, LLC,** | **CASE NO. 5:24-CV-276-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **CITY OF WINCHESTER, KENTUCKY, BRUCE MANLEY, and KENTUCKY LOTTERY CORPORATION,** | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on two Motions to Dismiss. One filed by the City of Winchester and its city manager (DE 9) and the other filed by the Kentucky Lottery Corporation (DE 11). Both motions are fully briefed and ready for review.

## I. The Case

This case involves the regulation of gambling devices under Kentucky law. Gambling devices are illegal in Kentucky, but coin-operated amusement machines are not. In 2024, the Kentucky legislature amended KRS §528.010 to define the term "coin-operated amusement machine" and to clarify the definitions of the terms "gambling" and "gambling device. H.B. 594, 2023 Regular Session (Ky. 2023). Shortly thereafter, however, the Kentucky Attorney General ("AG") issued an advisory to state law enforcement groups regarding the status of litigation involving "gray machines," which because of their unique design and function, fell into a gray area of the law. Although litigation was pending regarding the legal status of gray machines, the AG issued an opinion to county attorneys, and law enforcement agencies that "gray machines" are illegal gambling devices and encouraged the investigation and prosecution of the owners and operators of such machines.

On October 2, 2024, Plaintiff Skill State, LLC ("Skill State") filed this federal action. (DE 1.) It alleges that the City of Winchester (the "City") and City Manager Bruce Manley ("Manley") wrongfully

deprived it of private property by directing the seizure of certain Skill State-owned machines from various locations. (DE 6 at 2, 6.)  In its Complaint (DE 1) and in its Amended Complaint (DE 6), Skill State asserts that the machines in question are not illegal "gambling devices" but rather "coin-operated amusement machines" which are not subject to criminal and civil enforcement.  Skill State further alleges that in directing the wrongful seizure of its property, Manley and the City violated both its federal and state constitutional rights, interfered with its contracts, and converted its property without compensation.  Skill State seeks a declaration of its rights under both the state and federal constitutions, an injunction prohibiting further interference with its constitutional rights along with compensatory and punitive damages.

Skill State alleges that the Kentucky Lottery Corporation ("KLC") caused it harm by sending a copy of the AG advisory along with a letter warning retailers that a conviction for operating illegal gambling machines could cost them their Retailer Lottery Licenses.  Skill state claims that as a result, some retailers either disabled its machines or removed them from their premises.  Skill State maintains that in failing to point out that coin-operated amusement machines are expressly excluded from Kentucky's statutory definition of a gambling device, KLC violated its First Amendment Rights under the Federal constitution and also took arbitrary action in violation of Kentucky's Constitution; Skill State seeks declaratory and injunctive relieve along with damages for  impairment of its contracts. (*Id.* at 11–17.)

KLC and the City of Winchester defendants filed separate motions to dismiss this action. (DEs  9, 11.) The Court will address each of the defendants' Motions to Dismiss in turn.

## II.  Motion to Dismiss by Manley and the City of Winchester

Manley and the City of Winchester ("City Defendants") seek to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (DE 9 at 1.)   First, they argue that this Court should abstain from exercising subject matter jurisdiction over this litigation pursuant to the doctrines of abstention articulated in *Younger, Burford* and *Pullman.*[1] The City Defendants also assert that Skill State has failed to

---

[1] *See Younger v. Harris,* 401 U.S. 37 (1971); *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943); *R.R. Comm'n of Tex. v. Pullman Co*., 312 U.S. 496 (1941).

allege sufficient facts to state a cognizable claim under 42 U.S.C § 1983 for alleged violations of its rights under the First, Fourth and Fifth Amendments of the United States Constitution. Additionally, they assert that: (1) Bruce Manley should be dismissed as a named defendant because the claims against him are treated as claims against the City; and (2) Skill State is not entitled to recover punitive damages from a municipality under either 42 U.S.C. § 1983 or Kentucky law. (DE 9 at 23.)

### a. Abstention

The question at the heart of this lawsuit is whether the devices seized by Defendants are legal or illegal under Kentucky law, specifically KRS § 528.010 (amended June 29, 2023). The City Defendants argue that this court should abstain from exercising subject-matter jurisdiction over the federal claims against them because this very issue is pending in the Kentucky state courts. Although the City Defendants put forth multiple theories of abstention, this Court will analyze this matter in context of the *Pullman* theory of abstention, *inter alia, Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).[2]

"The doctrine of abstention, under which a district court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)) (internal quotation marks omitted). One exception to this general rule is based on the need to avoid "needless friction with state policies," and "a premature constitutional adjudication." *Pullman Co.*, 312 U.S. at 500. Choosing to abstain under these reasons helps protect the principle of comity inherent in our federal system.

"*Pullman* abstention is appropriate, as here, where a litigant asks a federal court to reach a constitutional question predicated on the federal court's own, non-binding interpretation of state law." *Stein v. Thomas*, 672 F. App'x 565, 571 (6th Cir. 2016) (citing *Moore v. Sims*, 442 U.S. 415, 425 (1979)). It is

---

[2] *Pullman* is the most applicable theory of abstention to this case as there are issues of state law that could resolve the case without implicating federal constitutional questions. Because *Pullman* adequately resolves the City's motion, the Court will not discuss the other form of abstention.

3

invoked "to avoid a decision on federal constitutional questions when the case hinges upon unresolved questions of state law." *Fifth Column, LLC v. Vill. of Valley View*, 221 F.3d 1334 (6th Cir. 2000).

"Under the *Pullman* doctrine, questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir. 1982). "*Pullman* abstention is appropriate in a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question." *Id*.

The Sixth Circuit has established two requirements for *Pullman* abstention: (1) an unclear state law; and (2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983); *Waste Services of the Bluegrass, LLC v. City of Georgetown,* 2021 U.S. Dist. LEXIS 74141, at *31 (E.D. Ky. Apr. 16, 2021) (quoting *GTE N., Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

This case concerns whether Skill States' and other so-called "gray machines" are legal. To decide whether City Defendants' seizure of the machines constitutes a violation of Skill State's constitutional rights, this Court would be required to determine whether Skill States' machines are in fact "coin-operated amusement machines" under KRS § 528.010(4). The ongoing dispute over "grey machines," i.e., gaming machines that may or may not be illegal implicates an unclear area of state law. Skill State claims that their machines are legal by declaring them, without further explanation, legal "coin-operated amusement machines." (DE 6 at ¶ 22.) City Defendants claim the seized machines were illegal "gambling devices." (DE 9 at 11.) To support their claim, City Defendants reference the Advisory's declaration that "risk-free play" machines are illegal gambling devices. (DE 1-1 at 2.)

City Defendants assert that the legality of Skill State's machines "is the subject of ongoing civil litigation in Kentucky's circuit courts." (DE 9 at 11–12.) Of the four cases cited by City Defendants, Skill State disputes only one. Because City Defendants assert that these Kentucky civil cases address the precise issue that Skill State wants this Court to decide, abstaining under *Pullman* is appropriate. It is up to

4

Kentucky state courts to determine how Skill State's machines are classified. Because it is unclear which provision of KRS § 528.010 applies to the machines, the first *Pullman* requirement is met.

Second, clarifying the classification of the machines under state law would obviate the necessity of deciding the federal constitutional claims. If Skill State's machines are determined to be an illegal "gambling device" under KRS 528.010(7), its First, Fourth, Fifth, and Fourteenth Amendment claims fail. In this instance, a state court could clarify the underlying issue without requiring this Court to analyze whether City Defendants violated Skill State's federal rights. Similarly, if the machines are determined to fall within the "coin-operated amusement machine" definition of KRS 528.010(4), Skill State would have sufficient remedy under state law. Accordingly, the second *Pullman* requirement is satisfied here.

Additionally, the Court's decision to abstain in this matter is in accordance with fundamental abstention principles. Abstention under *Pullman* is grounded in the respect owed to state sovereignty underlying our federalist system. *See Wxyz, Inc. v. Hand,* 658 F.2d 420, 424 (6th Cir. 1981) ("The doctrine facilitates the avoidance of unnecessary federal court interference in important state functions[.]"). Because gambling laws fall within the ambit of state authority, the risk of the federal court disrupting important state-law policies is considerable. *See Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a State, and legislation prohibiting it, or acts which may tend to or facilitate it, will not [be] interfered with by the court unless such legislation be a 'clear, unmistakable infringement of rights secured by the fundamental law.'"). Issuing an injunction or declaratory judgement on the constitutionality of City Defendants' actions would, in effect, decide the legality of Skill State's machines. It is incumbent that Kentucky state courts retain the power to decide and interpret its laws concerning the regulation of gambling. They, not this Court, should have the first bite of the apple at deciding the legality of this matter.

This case squarely presents an exceptional circumstance in which the application of *Pullman* abstention is appropriate: a Kentucky state court can decide the legal status of Skill State's machines under Kentucky law without having to address a federal constitutional question. Because staying the entire action

5

under *Pullman* is proper, this Court declines to address City Defendants' other arguments in their Motion to Dismiss. (DE 11.) Accordingly, this Court will grant City Defendants' Motion to Dismiss insofar as the case will be stayed pending a Kentucky state court's determination of the legality of Skill State's machines under KRS § 528.010.

### b. Dismissal of Manley as Named Defendant

The City Defendants move to dismiss the Winchester City Manager, Manley, as a defendant because he is named in the Amended Complaint in his official capacity. (DE 6 at 1.)  Under federal and state law, claims against city officials in their official capacities are treated as actions against the governmental entities. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) ("A section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself."); *MGPI of Ind., LLC v. City of Williamstown*, 2024 U.S. Dist. LEXIS 135312, *12 (E.D. Ky. Jul. 31, 2024) ("Courts generally dismiss official-capacity claims against officials when the government entity they represent is also a defendant for the same claims.").  Skill State does not object to Manley's dismissal. Accordingly, the Court will dismiss Manley as a named defendant in this action.

### c. Claims for Punitive Damages against the City of Winchester

The City of Winchester seeks dismissal of Skill State's punitive damages claims against it and those acting on its behalf.  In support of its motion, the City maintains that punitive damages are not awardable in § 1983 actions against municipalities. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, Skill State's request for punitive damages fails to state a claim upon which relief can be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### III. Motion to Dismiss by the Kentucky Lottery Corporation

KLC moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (DE 11 at 1.) KLC contends that Skill State lacks standing to sue, and, even if standing exists, asserts that Skill State has failed to state any claim upon which relief can be granted. The Court will address

each of KLC's arguments in turn.

### a.   Standing

KLC moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Skill State lacks standing to pursue its claims against KLC. (DE 11-1 at 5.) Specifically, KLC argues that Skill State "has failed to allege a concrete injury in fact or even a threatened injury that is fairly traceable to KLC's conduct." (*Id.* at 7.) It notes that Skill State's machines were seized by the Winchester Police Department the day after the Advisory was sent to law enforcement, and that while KLC distributed a letter to KLC retailers regarding the advisory, Skill State does not allege that the letter resulted in the City's seizure of Skill State's machines. (*Id.*)

To demonstrate standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, the plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The Sixth Circuit has adopted a very lenient standard for establishing traceability. *Buchholz v. Tanick*, 946 F.3d 855, 866 (6th Cir. 2020). This standard is *less demanding* than the standard for proving tort causation. *Id.* At the pleading stage, the plaintiff's burden of "alleging that their injury is 'fairly traceable'" to the defendant's challenged conduct is "relatively modest[.]" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997)). Even harms that flow "indirectly from the action in question are "fairly traceable." *Id.*

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir.

1977)). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). However, in a factual challenge the allegations in the complaint are not afforded a presumption of truthfulness and the Court weighs competing evidence to determine whether jurisdiction exists. *Id.*

Skill State has adequately demonstrated that it has standing to pursue its claims against KLC for its conduct in sending its letters to its various lottery retailers. According to its Amended Complaint, Skill State asserts that KLC's conduct resulted in the injury of lottery retailers either deactivating or outright removing Skill State's machines from their premises. (DE 6 at ¶ 50.) While KLC argues that its letters merely attached the Advisory and warned its lottery retailers that they cannot be a KLC retailer if they have a gambling-related conviction. However, this is a distinction without a difference. Skill State argues that the letter was an *implied* threat, and that these lottery retailers understood the letter to relate to the Advisory and thus acted in removing machines that they believed could result in the loss of their retailer license. The Court cannot remove the letters from the circumstances in which they were sent. To the extent that KLC argues that its conduct is not fairly traceable to City Defendants' decision to seize Skill State's machines from certain locations, it is clear from the Amended Complaint that the alleged injury relating to the claims against KLC is lottery retailers deactivating or removing the machines. Accordingly, the Court finds that Skill State does have standing to pursue its claims against KLC.

### b. Failure to State a Claim

In the alternative, KLC argues that the action should be dismissed for a failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, KLC argues that Skill State's First Amendment Claim against KLC fails, they did not exercise arbitrary power under § 2 of the Kentucky Constitution, nor did they take action to impair contracts under § 19 of the Kentucky Constitution as a matter of law. (DE 11-1 at 11, 14–15.)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must assert enough facts to provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

8

*Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks and citations omitted).

A complaint "must also contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint should be dismissed pursuant to Rule 12(b)(6) if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if an insurmountable bar to relief exists on the face of the complaint. *See Browning v. Pennerton*, 633 F.Supp.2d 415, 429 (E.D. Ky. Jun. 22, 2009) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Drain v. Nicholson*, No. 1:07-CV-690, 2008 WL 123881, at *1 (S.D. Ohio Jan. 10, 2008). However, the Court "need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged." *O'Hair v. Winchester Police Dep't*, No. CIV.A. 5:15-097-DCR, 2015 WL 4507181, at *2 (E.D. Ky. July 23, 2015).

Skill State argues that its machines are a "form of expressive activity which communicates ideas and messaging through features distinctive to the medium, and therefore, constitute protected speech under the First Amendment to the United States Constitution." (DE 6 ¶ 62.) Skill State alleges that KLC violated its First Amendment right by providing "notices regarding the suspension or termination of lottery retailer licenses" which it alleges are "misleading" and "casts too large a net." (*Id.* ¶ 61.) According to Skill State, KLC's notice violates the First Amendment in two ways. First, Skill State argues KLC's notice "created confusion" regarding the legal status of its machines, which caused retailers to shut down or remove its devices, and supported the confiscation of its devices by law enforcement. (*Id.* ¶ ¶ 50, 53.) Additionally, Skill State argues that this notice constitutes an unconstitutional prior restraint because it "impliedly threaten[ed] lottery license holders with possible sanctions." (*Id.* ¶ 63.) KLC argues that Skill State mischaracterizes the notice letter as there is no punishment for the possession of legal coin-operated amusement machines. (DE 11-1 at 10.)

9

The purpose of KLC's letter was to inform retailers of potential consequences for possessing illegal gambling machines. It did not specify that Skill State, or any of its machines, are illegal. It also did not state or imply that possessing a legal machine, i.e. a coin-operated amusement machine, would subject anyone to legal penalties. Even when taking all of Skill Sate's factual allegations as true, Skill State has failed to sufficiently plead that KLC's notice caused retailers, municipalities, or law enforcement agencies to take any action in derogation of Skill State's First Amendment rights. Because KLC did not cause a violation of Skill State's constitutional rights, its First Amendment claim fails.

Skill State has also failed to sufficiently allege that KLC's conduct constituted a prior restraint. The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur. *Alexander v. United States,* 509 U.S. 544, 550 (1993) (quotations omitted) (emphasis in original). The KLC notice was not an order, it was merely an advisory informing the public of the AG's interpretation of the law. The notice did not target specific individuals or name specific machines.  Nor did it forbid any communication from taking place. Because this is not a circumstance in which the doctrine of prior restraint applies, Skill State's First Amendment claim based on prior restraint fails as a matter of law. Accordingly, the Court finds that Skill State does not state a claim for which relief can be granted as to Count I of its complaint.

Count IV of Skill State's complaint alleges that "Defendants" have taken arbitrary and capricious action against Skill State for treating its machines as illegal gambling devices. (DE 6 ¶ 90.) As applied to KLC, the facts alleged are insufficient to state a claim. KLC has taken no action against Skill State or any of its machines. The KLC notice does not state any specific machines that are illegal, and KLC does not have the authority to enforce Kentucky statutes. Because KLC has not taken any action against Skill State, Count IV of its complaint must be dismissed.

KLC argues that Skill State misinterprets § 19 of the Kentucky Constitution. (DE 11-1 at 14.)  KLC asserts that it has not, and cannot, as a matter of law, enact a law. The threshold inquiry with respect to a claim for unconstitutional impairment of contract is whether a state law has operated as a substantial

10

impairment of a contractual relationship. *Williams v. City of Kuttawa*, 466 S.W.3d 505, 511 (Ky. App. 2015) (citation omitted). Skill State fails to sufficiently allege how KLC's notice letter operates as a state law that substantially impairs a contractual relationship. The notice letter is designed to *inform* retailers of the law, not impair their ability to contract. Because Skill State's complaint improperly applies § 19 of the Kentucky Constitution, Count V must be dismissed.

Skill State's complaint seeks declaratory and injunctive relief from KLC. Because Counts I, IV, and V against KLC are dismissed, there is nothing for this Court to declare or enjoin with regard to KLC. Accordingly, Counts II and III must also be dismissed.

### IV. Conclusion

For the aforementioned reasons, the Court hereby ORDERS as follows:

1)      City Defendants' Motion to Dismiss (DE 9) is GRANTED, to the extent that:

     a.   abstention is appropriate pursuant to the *Pullman* doctrine;

         i.   Skill State's action against the City is STAYED until such time that (a) a Kentucky state court judgment is issued that decides whether Skill State's machines are legal under KRS § 528.010; or (b) this Court issues an order lifting the stay; and

         ii.   within thirty (30) days of a Kentucky state court's resolution of the question regarding the legality of Skill State's machines under KRS § 528.010, the parties SHALL FILE a joint status report informing the Court on whether the stay should be lifted.

     b.   Bruce Manley is DISMISSED as a named defendant in this action; and

     c.   Skill State's claim for punitive damages is DISMISSED;

2)      KLC's Motion to Dismiss (DE 11) is GRANTED.

This 2nd day of October, 2025.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY